UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| NEUROLOGICAL SURGERY PRACTICE OF LONG ISLAND, PLLC,<br><br>Plaintiff,<br><br>vs<br><br>UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES; UNITED STATES DEPARTMENT OF THE TREASURY; UNITED STATES DEPARTMENT OF LABOR; XAVIER BECERRA, in his official capacity as Secretary, United States Department of Health and Human Services; JANET YELLEN, in her official capacity as Secretary, United States Department of the Treasury; and JULIE A. SU, in her official capacity as Secretary, United States Department of Labor,<br><br>Defendants. | **<u>AMENDED COMPLAINT</u>**<br><br>Case No. 2:24-cv-4503-HG |

Plaintiff, Neurological Surgery Practice of Long Island, PLLC, by its attorneys, Harris Beach PLLC, for its Amended Complaint against the Defendants, United States Department of Health and Human Services; United States Department of the Treasury; United States Department of Labor; Xavier Becerra, in his official capacity as Secretary, United States Department of Health and Human Services; Janet Yellen, in her official capacity as Secretary, United States Department of the Treasury; and Julie A. Su, in her official capacity as Secretary, United States Department of Labor (collectively, the Defendants will be referred to as the "Departments," alleges as follows:

**PRELIMINARY STATEMENT**

1. Plaintiff, Neurological Surgery Practice of Long Island, PLLC (the "Practice"), is one of the largest private neurosurgery practices in the New York metropolitan area. Its award-winning specialists are among the best neurosurgeons in the area and serve as chiefs of neurosurgery in the most prestigious hospitals on Long Island.

2. Historically, the Practice, like many other independent medical specialty groups, has chosen in most cases not to join health plan networks, because its relatively small size makes it impossible to negotiate acceptable rates. Accordingly, neither the Practice nor its neurosurgeons are health plan participating providers in most cases.

3. Notwithstanding this, however, the Practice regularly provides medically necessary, covered services on an "out of network" and often emergency basis to enrollees and beneficiaries of all health plans. The Practice's provision of these services since January 1, 2022, has been governed (in most cases) by the No Surprises Act, Public Law No. 116-260.

4. Congress passed the No Surprises Act in December 2020 after extensive bipartisan and bicameral deliberations. Its purpose was to prevent patients from having responsibility for medical bills from non-contracted medical providers with whom their private health plans had failed to reach adequate payment agreements. To solve this problem, medical providers were required to hold patients harmless for anything above what the patient would have paid for an in-network service.

5. If the provider and health plan could not come to a mutually satisfactory payment amount, Congress created a quick and fair independent dispute resolution (IDR) process, based largely on the "baseball style arbitration" process first created in New York State pursuant New York Financial Services Law §§ 601-08, *et seq.* .

6. Accordingly, the No Surprises Act set out, in specific detail, that both provider and health plan were directed to provide a wide range of relevant data (with few exceptions) for consideration by the IDR entity, including a datapoint called the Qualified Payment Amount (QPA). The QPA was a figure used to determine what the patient would owe and was intended to reflect a median of contracted rates for that health plan and that region.

7. Very short and specific time frames were set out for the IDR entity to make its determination and for the health plan to make its additional payment if it lost. It was the responsibility of the Departments to oversee this process. Accordingly, the Act set forth tight timeframes and deadlines for the IDR process to ensure that there is a predictable and efficient process designed to enable providers to be reasonably and appropriately reimbursed for the medically necessary, and often lifesaving treatment, they provide health plan beneficiaries.

8. This lawsuit concerns a discrete, narrow, but extremely important part of the IDR's process: the ability of the parties to select and object to the proposed IDR entities responsible for conducting the IDR process and adjudicating the dispute. By statute and regulation, this process must be completed and the IDR entity must be selected "not later than the last day of the 3-business day period following the date of the initiation of the [IDR] process." 42 U.S.C. § 300gg-111(c)(4)(F); *see also* 45 C.F.R. § 149.510(c)(1)(i).

9. Typically, providers, such as the Practice, are the initiating party for the IDR process and make their IDR entity selection when they initiate the dispute. Under the regulations, once the initiating party makes its IDR entity selection, the non-initiating party – typically the health plan – can accept the initiating party's selection or reject it, and propose its own, alternative IDR entity selection. 45 C.F.R. § 149.510(c)(1)(i). If the non-initiating party does this, the initiating party can accept or reject the non-initiating party's proposed alternative selection. *Id.* As

alleged above, this process must be completed within three business days of the IDR proceedings initiation. *Id.* If the initiating party rejects within the three-business day period, then the Defendants are required to randomly select an IDR entity. *Id.* § 149.510(c)(1)(iv) If the three-business day period ends without the initiating party either accepting or rejecting the non-initiating party's proposed alternative IDR entity selection, then that alternative IDR entity is deemed selected. *Id.* 149.510(c)(1)(i).

10. Thus, the selection process depends upon the non-initiating party proposing an alternative IDR entity within a reasonable time after receiving the initiating party's proposed selection. If the non-initiating party does this, the initiating party then has sufficient time to either accept or reject the non-initiating party proposed alternative IDR entity. If the non-initiating party does not do this, but instead waits until the end of the three-day period to propose its alternative IDR entity selection, then the initiating party is deprived of the ability to object to the proposed alternative IDR entity; it is automatically deemed accepted.

11. As alleged below, starting in or around four months ago, the payers embarked upon a strategy of waiting until the very end of the three-business day period – and either after or right before regular business hours end – to propose an alternative IDR entity. This tactic effectively denies the Practice and other providers the ability to object to the payers' alternative IDR entity selections and guarantees that the IDR entities specifically chosen by the payers are the ones selected to preside over IDR proceedings.

12. This is not what was intended when Congress established the IDR process. Each party to the IDR process was supposed to have a fair and meaningful opportunity to participate in the selection of an IDR entity and raise objections if desired. The payers' actions have deprived

the ability of the Practice and other similarly situated providers a reasonable time to object to the payers' IDR selection, thereby forcing the selection of the payers' choice.

13. Making matters worse, the Practice raised this issue, and the harm it is causing, with Defendants, and Defendants have failed and refused to take steps to immediately rectify the issue. Thus, each day, the Practice and other similarly situated practices are being denied their ability to choose and object to IDR entities because of a concerted effort by payers to deny this choice and force the selection of the IDR entities of their choosing.

14. The No Surprises Act requires both parties to have a fair and meaningful opportunity to participate in the selection of an IDR entity and raise objections if desired. This is not occurring at the present time, and the Departments are not taking the steps necessary to immediately ensure that the Practice and other similarly situated providers have the ability choose and object to IDR entities. Accordingly, the Departments' actions are contrary to law, and this Court must step in to compel the Departments to follow the mandate of the No Surprises Act and immediately ensure that the Practice and other similarly situated providers can choose and object to IDR entities. ,

15. Immediate action is particularly called for here given the Departments prior track record of losing four lawsuits to providers based on their failure to follow the statutory mandates of the No Surpises Act and favoring health plans. *See, e.g.*, *Texas Medical Association. v. United States Department of Health and Human Services*, Case No. 6:21-cv-425 (E.D. Tex. Feb. 23, 2022); *LifeNet, Inc. v. United States Department of Health and Human Services*, Case No. 6:22-cv-162 (E.D. Tex. Jul. 26, 2022), *Texas Medical Association v. United States Department of Health and Human Services,* Case No. 6:22-cv-372 (E.D. Tex. Feb. 6, 2023); *Texas Medical Association v. United States Department of Health and Human Services,* Case No. 6:23-cv-59 (E.D. Tex. Aug. 3. 2023).

## PARTIES

16. Plaintiff, Neurological Surgery Practice of Long Island, PLLC, is a New York professional service limited liability medical company with its principal place of business located at 100 Merrick Road, Suite 128W, Rockville Centre, New York.

17. Neurological Surgery Practice of Long Island, PLLC was formed in August 2020, and, because of a merger in December 2020, is the corporate successor of Neurological Surgery, P.C.

18. Defendant United States Department of Health and Human Services is one of the three federal executive departments that Congress charged with implementing and administering the No Surprises Act.

19. Defendant United States Department of the Treasury is another one of the three federal executive departments that Congress charged with implementing and administering the No Surprises Act.

20. Defendant United States Department of Labor is the final one of the three federal executive departments that Congress charged with implementing and administering the No Surprises Act.

21. Defendant Xavier Becerra is the presidentially nominated and senatorially confirmed Secretary of the United States Department of Health and Human Services. Secretary Becerra is sued in his official capacity only.

22. Defendant Janet A. Yellen is the presidentially nominated and senatorially confirmed Secretary of the United States Department of the Treasury. Secretary Yellen is sued in her official capacity only.

23. Defendant Julie A. Su is the duly appointed Secretary of the United States Department of Labor. Acting Secretary Su is sued in her official capacity only.

## **JURISDICTION AND VENUE**

24. The Court has jurisdiction over this action under 28 U.S.C. § 1331 and the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701–06. The Practice is entitled to the requested declaratory and injunctive relief under the APA and the Declaratory Judgment Act, 28 U.S.C. §§ 2201–02.

25. Venue is proper in this judicial district under 28 U.S.C. § 1391(e) because this is an action against officers and agencies of the United States, the plaintiff resides in this district, and no real property is involved in this action

## **FACTS COMMON TO ALL CAUSES OF ACTION**

### **NSPC**

26. Neurological Surgery Practice of Long Island, PLLC (the "Practice"), is one of the largest private neurosurgery practices on Long Island and in the New York metropolitan area. Its award-winning specialists are among the best neurosurgeons in New York City and on Long Island and serve as chiefs of neurosurgery in the most prestigious hospitals on Long Island.

27. Historically, the Practice, like many other independent medical specialty groups, has chosen in most cases not to join health plan networks, because its relatively small size makes it impossible to negotiate acceptable rates. Accordingly, neither the Practice nor its neurosurgeons are health plan participating providers in most cases. Notwithstanding this, the Practice regularly provides medically necessary, covered services on an "out of network" and often emergency basis to beneficiaries of all health plans.

**The No Surprises Act**

28. In December 2020, the United States Congress enacted the No Surprises Act, which was signed into law as part of the Consolidated Appropriations Act of 2021 (Public Law 116-260; Division BB § 109) on December 27, 2020. It took effect on January 1, 2022.

29. No Surprises Act § 103 amends 42 U.S.C. §§ 300gg *et seq*. to establish an IDR process for non-emergency services performed by non-participating physicians at in-network hospitals, hospital outpatient departments, critical access hospitals, and ambulatory surgical centers and out-of-network emergency services in the emergency department of a hospital or independent freestanding emergency department

30. The No Surprises Act provides that the federal IDR process will apply and may be used by physicians and health plans to determine the out-of-network rate for emergency services in the emergency department of a hospital or independent freestanding emergency department and non-emergency items and services furnished by non-participating providers during a visit to a participating health care facility when a "specified state law" does not apply (42 U.S.C. § 300gg-111).

31. Since the No Surprises Act became effective on January 1, 2022, the Practice's reimbursement for many of these services has been governed by the provisions of the Act.

32. The No Surprises Act prohibits out-of-network providers, such as the Practice, from balance billing or otherwise pursuing payments from health plan members. *See* 42 U.S.C. §§ 300gg-131(a) (emergency services), 300gg-132 (non-emergency services performed by nonparticipating providers at participating facilities).

33. Given this balance billing ban imposed on out-of-network providers, the Act requires health plans, within 30 calendar days after the out-of-network provider transmits its bill to the health plan, to either make an initial payment to the provider or issue a notice of denial of payment. *See id.* §§ 300gg-111(a)(1)(C)(iv) (emergency services), 300gg-111(b)(1)(C) (non-emergency services).

34. Under the No Surprises Act, the provider then has 30 days from day it receives either the initial payment or notice of denial of payment to initiate open negotiations with the health plan for purposes of determining a mutually agreeable amount for the services rendered. This open negotiation period lasts 30 days. *See id.* § 300gg-111(c)(1)(A).

35. If the open negotiations do not result in a mutually agreeable amount for the services rendered, then either party (the provider or the health plan) has four days from the end of the open negotiation period to initiate the independent dispute resolution process. *See id.* § 300gg-111(c)(1)(B).

36. Under the independent dispute resolution process, an IDR entity is responsible for obtaining offers from both parties as to the appropriate payment for the service, and employing

certain criteria to determine one of the party's offers as the appropriate payment for the service. *See id.* § 300gg-111(c)(5).

**<u>The IDR Selection Process</u>**

37. The first step in the IDR process is the selection of the IDR entity. Regarding this, the No Surprises Act requires the Departments to "provide for a method . . . that allows . . . [the parties] to jointly select, no later than the last day of the 3-business day period following the date of the initiation of the ]IDR] process," a qualifying IDR entity." *See id.* § 300gg-111(c)(4)(F)(i).

38. The Act goes on to state that "in the case such parties do not make such selection by such last day," the Departments are required to "not later than 6 business days after such date of initiation . . . select such an [IDR] entity." *See id.* § 300gg-111(c)(4)(F)(ii).

39. The Departments' current method for selecting IDR entities is codified at 45 C.F.R. § 149.510. This regulation provides that the initiating party in the IDR process (who is typically the provider) must, as part of its notice of IDR initiation, select a preferred IDR entity. *Id.* § 149.510(b)((2(iii)(A)(5).

40. Then, the non-initiating party in the IDR process (who is typically the health plan) "may agree or object to the preferred certified IDR entity identified in the notice of IDR initiation." If the non-initiating party "fails to object within 3 business days, the preferred certified IDR entity identified in the notice of IDR initiation will be selected and will be treated as jointly agreed to by the parties, provided that the certified IDR entity does not have a conflict of interest." *Id.* § 149.510(c) (1)(i)

41. If, however, the non-initiating party objects, "that party must notify the initiating party of the objection and propose an alternative certified IDR entity. The initiating party must then agree or object to the alternative certified IDR entity; if the initiating party fails to agree or object to the alternative certified IDR entity, the alternative certified IDR entity will be selected and will be treated as jointly agreed to by the parties." *Id.*

42. Under this regulation, the initiating party has until the end of the three-day period from notice of initiation to object to the non-initiating party's proposed alternative IDR entity. If it does not object within this period, then the regulation provides that the alternative IDR entity "will be selected and will be treated as jointly agreed to by the parties." *Id.* (If the initiating party does object within this three-day period, then it is up to the Departments to select an IDR entity through random selection. *Id.* § 149.510(c) (1)(i, iv).)

**The Denial of The Practice's Rights**

43. From when the No Surprises Act became effective on January 1, 2022 through several months ago, payers (who are typically the non-initiating parties) routinely proposed alternative IDR entities within a reasonable time after receiving the Practice's proposed selection. By doing this, the Practice had sufficient time to accept or reject the payer's proposed alternative entity before the three-day period ended.

44. Approximately eight months ago, virtually all payers began pursuing a similar strategy: Waiting until the third day after initiation to propose alternative IDR entities. Making matters worse, the payers also seemed to strategically time their proposal to ensure that it would be received by the Practice after regular business hours and only a short time before the three-day period expired.

45. This tactic – which was employed not only against the Practice but against other similarly situated providers as well – functionally denied the Practice the ability to object to the payers' proposed alternative IDR entity. Indeed, given that the proposals were typically made after regular business hours and only a short time before the three-day period expired, the Practice did not learn about the proposed alternative IDR entity in most cases until *after* the three-day period expired. Since the three-day period passed without the Practice objecting to the payer's proposed alternative IDR entity, the proposed entity was deemed accepted by the regulation. *See* 45 C.F.R. § 149.510(c) (1)(i).

46. This tactic significantly harmed the Practice, and other similarly situated practices in two ways: One, the IDRE selections forced by the payers in almost all instances were an IDR entity that, statistically and historically, favored the payers in IDR proceedings at a higher rate than average and certainly higher than the originally selected IDR entities. Two, the IDRE selections forced by the payers in almost all instances were an IDR entity that, statistically and historically, took longer than average to come to a determination, and certainly longer than the originally selected IDR entities.

47. Thus, the impact of the payers gaming the IDRE selection process was to create a situation where the IDRE forced by the payers resulted in a situation where it was far less likely for the Practice to prevail, and, if it did ultimately prevail, far longer to get its additional reimbursement.

48. Attached to this Complaint as Exhibit 1 are true and correct copies of IDR notices demonstrating the payers' tactics.

49. Specifically, these examples show the short time frames after regular business hours that the payers afforded the Practice:

| **DISP No.** | **Date Proposed Alternative IDR** | **Three Day Period Expires** |
|---|---|---|
| 1273266 | Fri, April 26, 2024 at 6:59pm | Fri, April 26, 2024 at 11:59pm |
| 1273201 | Fri, April 26, 2024 at 7:06pm | Fri, April 26, 2024 at 11:59pm |
| 1273075 | Fri, April 26, 2024 at 7:14pm | Fri, April 26, 2024 at 11:59pm |
| 1273007 | Fri, April 26, 2024 at 7:15pm | Fri, April 26, 2024 at 11:59pm |
| 1155142 | Wed, March 20, 2024 at 10:34pm | Wed, March 20, 2024 at 11:59pm |
| 1155108 | Wed, March 20, 2024 at 10:40pm | Wed, March 20, 2024 at 11:59pm |
| 1155078 | Wed, March 20, 2024 at 11:03pm | Wed, March 20, 2024 at 11:59pm |
| 1161810 | Thu, March 21, 2024 at 4:27pm | Thu, March 21, 2024 at 11:59pm |

50. The Departments were aware, from the beginning, of the payers' actions and the functional denial of the ability of the Practice and other similarly situated providers to object to the payers' proposed alternative IDR entities because the relevant notices were all submitted through their IDR portal.

51. Yet, when the Practice objected to these forced selections and asked the Departments to take immediate steps to protect and restore their ability to object to the payers' proposed alternative IDR entities – to not be forced to accept the payers' choice in most instances – the Departments flatly refused.

52. Indeed, while the Departments acknowledged that it was the payers that were delaying providing their proposed alternative IDR entity selection until the tail-end of the three business day period, all the Departments did was to point to a proposed regulation, which may(or may not) take effect at some point in the future. *See* Federal Independent Dispute Resolution Operations, 88 Fed. Reg. 75,744, 75,774-75 (Nov. 3, 2023). Under this proposed regulation, if the non-initiating party submits the notice of IDR initiation response on the third business day after

the date of IDR initiation and the initiating party does not agree on the same day, the parties would have failed to jointly select a certified IDR entity. *Id.* at 75,774.

53. While this proposed regulation, if adopted, may provide some protection to the Practice and other similarly situated providers in the future, it is cold comfort for the Practice right now, because daily it is being denied the ability to object to payers proposed alternative IDR entities and is being forced to accept the payers' choice of IDR entities.

54. Making matters worse, in almost all cases, the payers are choosing Maximus as the IDR entity, which has a track record of consistently finding for payers in IDR proceedings, regardless of the circumstances.

**The Departments' Violation of Law**

55. The Departments refusal to step in immediately and protect the ability of the Practice and other similarly situated providers to object to the payers' proposed alternative IDR entities – and thus forced to accept the payers' choice – violates the express provisions of the No Surprises Act, which mandates that the Departments "provide for a method . . . that allows . . . [the parties] to jointly select, no later than the last day of the 3-business day period following the date of the initiation of the ]IDR] process," a qualifying IDR entity." *See id.* § 300gg-111(c)(4)(F)(i).

56. As described above, due to the actions of the payers, there is now a system in which payers are permitted to game the system and force their unilateral selection of an IDR entities. Accordingly, the Departments are not providing a method that allows joint selection of IDR entities, which is mandated by the No Surprises Act. *See id.*

57. The Departments are also violating the No Surprises Act, by requiring the Practice and other similarly situated providers to respond to payers' proposed alternative IDR entities by 11:59pm – which is hours beyond the end of the business day – even though the Act mandates that the IDR selection process is governed by *business* days.

58. This Court accordingly must compel the Departments to take immediate steps to honor their statutory obligations and rectify this violation of law and denial of IDR selection rights.

59. These steps should include at least the following: (a) requiring that non-initiating parties provide proposed alternative IDR entities in such a manner that provides the initiating party with no less than 36 hours before the end of the three-business day period to decide whether to accept or reject the non-initiating party's proposed alternative IDR entity; and (b) to the extent that there are pending IDR proceedings involving the Practice in which (i) the payer's proposed alternative IDR entity was deemed selected because the Practice did not respond before the end of three-business day period; and (ii) the Practice was given less than 36 hours before the end of the three-day business period to accept or reject the proposed alternative IDR entity, the Departments should withdraw the assignment to the payers' proposed alternative IDR entity and re-assign using a random selection process.

60. There is no adequate remedy at law for these irreparable injuries.

**FIRST CAUSE OF ACTION**

61. Plaintiff repeats and re-alleges the allegations set forth above as if more fully set forth herein.

62. When implementing and administering the No Surprises Act, and particularly the federal IDR process established by the Act, the Departments are subject to the express provisions of the Act as well as the requirements of the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 1 *et seq.*

63. Pursuant to the provisions of the No Surprises Act and the requirements of the APA, the Departments are prohibited from:

a. Acting arbitrarily, capriciously, in abuse of discretion, or otherwise not in accordance with law, *id.* § 706(2)(A).

b. Acting in excess of statutory jurisdiction, or limitations, *id.* § 706(2)(C).

c. Acting without observance of procedure required by law, *id.* § 706(2)(D).

64. By reason of all the foregoing, and as specifically alleged in detail above, the Departments have violated these obligations under the No Surprises Act and the APA by refusing to step in immediately and protect the ability of the Practice and other similarly situated providers to object to the payers' proposed alternative IDR entities, thereby creating a system which permits the payers' proposed alternative IDR entities to be automatically and unilaterally accepted.

65. These actions by the Departments– violate the express provisions of the No Surprises Act, which mandates that the Departments "provide for a method . . . that allows . . . [the parties] to jointly select, no later than the last day of the 3-business day period following the date of the initiation of the ]IDR] process," a qualifying IDR entity." *See* 42 U.S.C. § 300gg-111(c)(4)(F)(i).

66. By reason of all the foregoing, the Practice is entitled to a judgment under the Declaratory Judgment Act, 38 U.S.C. §§ 2201-02, declaring that the Departments have violated these obligations under the No Surprises Act and the APA by refusing to step in immediately and protect the ability of the Practice and other similarly situated providers to object to the payers' proposed alternative IDR entities, thereby creating a system which permits the payers' proposed alternative IDR entities to be automatically and unilaterally accepted.

67. By reason of the all the foregoing, the Practice is entitled to an order under 5 U.S.C. § 706 directing that the Departments immediately take all steps necessary to honor their statutory obligations and rectify this violation of law and denial of IDR selection rights.

68. These steps should include at least the following: (a) requiring that non-initiating parties provide proposed alternative IDR entities in such a manner that provides the initiating party with no less than 36 hours before the end of the three-business day period to decide whether to accept or reject the non-initiating party's proposed alternative IDR entity; and (b) to the extent that there are pending IDR proceedings involving the Practice in which (i) the payer's proposed alternative IDR entity was deemed selected because the Practice did not respond before the end of three-business day period; and (ii) the Practice was given less than 36 hours before the end of the three-day business period to accept or reject the proposed alternative IDR entity, the Departments should withdraw the assignment to the payers' proposed alternative IDR entity and re-assign using a random selection process.

69. By reason of all the foregoing, awarding such other and further relief under the No Surprises Act and the APA that the Court deems just, proper, and equitable.

**SECOND CAUSE OF ACTION**

70. Plaintiff repeats and re-alleges the allegations set forth above as if more fully set forth herein.

71. By reason of all the foregoing, and as specifically alleged in detail above, the Departments have violated their obligations under the No Surprises Act and the APA by APA by refusing to step in immediately and protect the ability of the Practice and other similarly situated providers to object to the payers' proposed alternative IDR entities, thereby creating a system which permits the payers' proposed alternative IDR entities to be automatically and unilaterally accepted.

72. These actions by the Departments– violate the express provisions of the No Surprises Act, which mandates that the Departments "provide for a method . . . that allows . . . [the parties] to jointly select, no later than the last day of the 3-business day period following the date of the initiation of the ]IDR] process," a qualifying IDR entity." *See* 42 U.S.C. § 300gg-111(c)(4)(F)(i).

73. These actions, as alleged above, have significantly, grievously, and irreparably harmed the Practice.

74. The Practice has no adequate remedy at law.

75. The Departments have no defense or explanation for their illegal, unauthorized, and *ultra vires* actions and inactions outlined above.

76. By reason of the foregoing, the Practice is entitled to a writ of prohibition or mandamus, as appropriate, under the All-Writs Act, 28 U.S.C. § 1651(a), directing that the

Departments immediately take all steps necessary to honor their statutory obligations and rectify this violation of law and denial of IDR selection rights.

77. These steps should include at least the following: (a) requiring that non-initiating parties provide proposed alternative IDR entities in such a manner that provides the initiating party with no less than 36 hours before the end of the three-business day period to decide whether to accept or reject the non-initiating party's proposed alternative IDR entity; and (b) to the extent that there are pending IDR proceedings involving the Practice in which (i) the payer's proposed alternative IDR entity was deemed selected because the Practice did not respond before the end of three-business day period; and (ii) the Practice was given less than 36 hours before the end of the three-day business period to accept or reject the proposed alternative IDR entity, the Departments should withdraw the assignment to the payers' proposed alternative IDR entity and re-assign using a random selection process.

78. By reason of all the foregoing, awarding such other and further relief that the Court deems just, proper, and equitable.

**WHEREFORE**, for all the reasons set forth above, the Plaintiff demands judgment against the Defendants, as follows:

1. Declaring, pursuant to the Declaratory Judgment Act, 38 U.S.C. §§ 2201-02, that the Departments have violated their obligations under the No Surprises Act and the APA by refusing to step in immediately and protect the ability of the Practice and other similarly situated providers to object to the payers' proposed alternative IDR entities, thereby creating a system which permits the payers' proposed alternative IDR entities to be automatically and unilaterally accepted.

2. An order under 5 U.S.C. § 706 directing that the Departments immediately take all steps necessary to honor their statutory obligations and rectify this violation of law and denial of IDR selection rights. These steps should include at least the following: (a) requiring that non-initiating parties provide proposed alternative IDR entities in such a manner that provides the initiating party with no less than 36 hours before the end of the three-business day period to decide whether to accept or reject the non-initiating party's proposed alternative IDR entity; and (b) to the extent that there are pending IDR proceedings involving the Practice in which (i) the payer's proposed alternative IDR entity was deemed selected because the Practice did not respond before the end of three-business day period; and (ii) the Practice was given less than 36 hours before the end of the three-day business period to accept or reject the proposed alternative IDR entity, the Departments should withdraw the assignment to the payers' proposed alternative IDR entity and re-assign using a random selection process.

3. A writ of prohibition or mandamus, as appropriate, under the All-Writs Act, 28 U.S.C. § 1651(a), directing that the Departments immediately take all steps necessary to honor their statutory obligations and rectify this violation of law and denial of IDR selection rights. These steps should include at least the following: (a) requiring that non-initiating parties provide proposed alternative IDR entities in such a manner that provides the initiating party with no less than 36 hours before the end of the three-business day period to decide whether to accept or reject the non-initiating party's proposed alternative IDR entity; and (b) to the extent that there are pending IDR proceedings involving the Practice in which (i) the payer's proposed alternative IDR entity was deemed selected because the Practice did not respond before the end of three-business day period; and (ii) the Practice was given less than 36 hours before the end of the three-day business period to accept or reject the proposed alternative IDR entity, the Departments should

withdraw the assignment to the payers' proposed alternative IDR entity and re-assign using a random selection process.

4. Awarding attorney's fees to the Plaintiff in accordance with the provisions of the Equal Access to Justice Act, 28 U.S.C. § 2412(d).

5. Awarding such other and further relief that the Court deems just, proper, and equitable including, but not limited to, costs, disbursements, and other allowances.

Dated: Uniondale, New York
November 19, 2024

HARRIS BEACH, PLLC
*Attorneys for Plaintiff*

By:_______________________________
Roy W. Breitenbach
333 Earle Ovington Boulevard, Suite 900
Uniondale, New York 11553
(516) 880-8484

TO:

UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES
The Hubert H. Humphrey Building
200 Independence Avenue, SW
Washington, DC 20201

UNITED STATES DEPARTMENT OF THE TREASURY
The Treasury Building
1500 Pennsylvania Avenue, NW
Washington, DC 20220

UNITED STATES DEPARTMENT OF LABOR
Frances Perkins Building
200 Constitution Avenue, NW
Washington, DC 20210

THE HON. XAVIER BECERRA
United States Secretary of Health and Human Services
The Hubert H. Humphrey Building
200 Independence Avenue, SW
Washington, DC 20201

THE HON. JANET YELLEN
United States Secretary of the Treasury
The Treasury Building
1500 Pennsylvania Avenue, NW
Washington, DC 20220

THE HON. JULIE A. SU
United States Secretary of Labor
Frances Perkins Building
200 Constitution Avenue, NW
Washington, DC 20210

THE HON. MERRICK B. GARLAND
United States Attorney General
Robert F. Kennedy Department of Justice Building
950 Pennsylvania Avenue, NW
Washington, DC 20530

BREON PEACE, ESQ.
United States Attorney, Eastern District of New York
610 Federal Plaza
Central Islip, NY 11722