UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

NEUROLOGICAL SURGERY PRACTICE
OF LONG ISLAND, PLLC,

                Plaintiff,

v.

U.S. DEPARTMENT OF HEALTH AND
HUMAN SERVICES *et al.*,

                Defendants.

**MEMORANDUM & ORDER**
24-CV-4503 (HG)

---

**HECTOR GONZALEZ**, United States District Judge:

      Plaintiff Neurological Surgery Practice of Long Island, PLLC brings this action against the United States Department of Health and Human Services, Department of the Treasury, Department of Labor, and the Secretaries of those agencies. *See* ECF No. 24 (Amended Complaint ("AC"). Plaintiff alleges that Defendants have failed to lawfully implement the No Surprises Act, Public Law No. 116-260 (the "NSA"), in violation of the Administrative Procedure Act, 5 U.S.C. § 706, *et seq.* (the "APA"). *See id.* Presently before the Court is Defendants' motion to dismiss. *See* ECF No. 26-1. For reasons explained below, the Court GRANTS the motion.

## BACKGROUND

      The Court draws the following facts from the AC.[1] Plaintiff is a private neurosurgery practice based in New York that provides out-of-network medical services to enrollees of all

---

[1]     The Court is "required to treat [Plaintiff's] factual allegations as true, drawing all reasonable inferences in favor of Plaintiff[] to the extent that the inferences are plausibly supported by allegations of fact." *In re Hain Celestial Grp., Inc. Sec. Litig.*, 20 F.4th 131, 133 (2d Cir. 2021). The Court therefore "recite[s] the substance of the allegations as if they

health plans.  AC ¶¶ 26–27.  Since January 2022, Plaintiff's provision of these services has been governed by the NSA.  *Id.* ¶¶ 28, 31.  The NSA bars out-of-network providers, such as Plaintiff, from balance billing or seeking payment directly from members of a health plan.  *Id.* ¶ 32; *see also* 42 U.S.C. §§ 300gg–131(a) (emergency services); 300gg–132 (non-emergency services).  Instead, a provider must seek compensation from a patient's health care plan.  AC ¶ 33.  Under the NSA, upon receiving a request for payment from a provider, the patient's health care plan determines whether, and in what amount, it will pay for the services.  *Id.* ¶¶ 33–34.  If the provider and health care plan cannot agree on an amount, the NSA provides for an independent dispute resolution ("IDR") process in which a private arbitrator ("IDR entity") selects between amounts submitted by the provider and the health plan.  *Id.* ¶¶ 35–36.

    The NSA provides deadlines for various steps in the process.  A health care plan's initial payment decision must be made within 30 days after the out-of-network provider transmits its bill to the health plan.  *See* 42 U.S.C. § 300gg-111(a)(1)(C)(iv)(I).  If there is a dispute between the health plan and the provider regarding the proper reimbursement amount, there is a 30-day open negotiation period.  *Id.* at § 300gg-111(c)(1)(A).  If negotiations are unsuccessful, and there is no specified state law that applies to resolve the parties' dispute, a party wishing to bring an IDR proceeding must do so within four days.  *Id.* at § 300gg-111(c)(1)(B).  Following the initiation of the IDR process, the parties jointly select an IDR entity within three business days (the "Selection Period").  *Id.* at § 300gg-111(c)(4)(F)(i).

    The Defendants promulgated a method for selecting the IDR entity.  *See* 45 C.F.R. § 149.510.  This regulation states that the party initiating the IDR process must choose a

---

represented true facts, with the understanding that these are not findings of the [C]ourt, as [I] have no way of knowing at this stage what are the true facts."  *Id.*

preferred IDR entity when submitting the notice to begin the process. *Id.* § 149.510(b)(2)(iii)(A)(5). Plaintiff alleges that the initiating parties in the IDR process are typically providers, while the non-initiating parties are typically health care plans ("Payers"). AC ¶¶ 39–40. Next, the non-initiating party in the IDR process may either accept or object to the preferred certified IDR entity named in the initiation notice. 45 C.F.R. § 149.510(c)(1)(i). If the non-initiating party objects, then it must notify the initiating party and propose an alternative IDR entity. *Id.* The initiating party must then respond by either agreeing to or objecting to the proposed alternative certified IDR entity. *Id.* If the initiating party objects, then an IDR entity is chosen at random. *Id.* § 149.510(c)(1)(iv). If the initiating party does not respond, the non-initiating party's alternative entity is automatically selected and considered mutually agreed upon by both parties. *Id.* § 149.510(c)(1)(i). This automatic selection provision is the source of Plaintiff's grievances. Plaintiff contends that this automatic selection provision invites strategic abuse, allowing Payers to exploit timing loopholes to ensure their preferred IDR entities are selected without genuine agreement. AC ¶¶ 43–54.

Plaintiff alleges that "virtually all [P]ayers" are taking advantage of this process by waiting until the third day after initiation to propose alternative IDR entities. AC ¶ 44. According to Plaintiff, Payers typically wait to propose an alternative IDR entity until "after regular business hours and only a short time before the [Selection P]eriod expire[s]," so that Plaintiff does not learn about the proposal until after the expiration of the Selection Period. *Id.* ¶ 45. Because Plaintiff is often unable to object in time, the Payer-proposed IDR entity is deemed mutually agreed upon by the parties. *Id.* Plaintiff alleges that this tactic is harmful because "in almost all instances" the Payers choose an IDR entity that "statically and historically" has favored Payers and takes "longer than average to come to a determination, and

certainly longer than the originally selected IDR entities." *Id.* ¶ 46.  This results in a "situation where it [i]s far less likely for [Plaintiff] to prevail, and, if it d[oes] ultimately prevail, far longer to get its additional reimbursement." *Id.* ¶ 47.

To support its allegations, Plaintiff provides eight examples of IDR notices it received from Payers within hours of the expiration of the Selection Period.  *Id.* ¶ 49; *see also* ECF No. 1-1 (IDR Notices).[2]  In all of these notices, the Payers selected Maximus Federal Services, Inc. ("Maximus"), which Plaintiff alleges favors Payers in IDR proceedings "at a higher rate than average" and takes "longer than average to come to a determination."  AC ¶ 46; ECF No. 1-1 at 2–9.[3]

On November 3, 2023, Defendants proposed a rule that would revise the IDR process, including how parties jointly select an IDR entity.  *See Fed. Indep. Disp. Resol. Operations*, 88 Fed. Reg. 75,744, 75,774–75 (proposed Nov. 3, 2023).  Notably, the proposal would amend 45 C.F.R. § 149.510(c)(1)(i) to clarify that if the non-initiating party waits until the final day of the three-business-day window to object and propose an alternative IDR entity, and the initiating party does not consent by the deadline, the parties will be deemed to have failed to make a joint selection.  *Id.* at 75,775.  The public comment period ended on February 5, 2024, and the Defendants are currently reviewing the feedback before issuing a final rule.  *See Fed. Indep. Disp. Resol. Operations*, 89 Fed. Reg. 3,896, 3,896–97 (proposed Nov. 3, 2023).  According to

---

[2]  While Plaintiff failed to attach the exhibits referenced in the AC to that document, it did attach those materials to its original Complaint.  The Court considers those exhibits in this Order.  *See Bronx Freedom Fund v. City of New York*, No. 21-cv-10614, 2023 WL 2752098, at *3 (S.D.N.Y. Mar. 31, 2023) (considering documents that were attached to plaintiff's original complaint in deciding a motion to dismiss a plaintiff's amended complaint).

[3]  Unless otherwise indicated, when quoting cases and the parties' papers, all internal quotation marks, alteration marks, emphases, footnotes, and citations are omitted.  The Court refers to the pages assigned by the Electronic Case Files system ("ECF").

Plaintiff, "[w]hile this proposed regulation, if adopted, may provide some protection" to Plaintiff, "it is cold comfort for [Plaintiff] right now, because daily it is being denied the ability to object to [P]ayers proposed alternative IDR entities and is being forced to accept the [P]ayers' choice of IDR entities." AC ¶ 53.

Plaintiff filed its initial Complaint on June 26, 2024. ECF No. 1. On October 21, 2024, Defendants filed a pre-motion letter in anticipation of motion to dismiss. ECF No. 21. In response, Plaintiff requested leave to amend, ECF No. 22, and the Court granted the request. *See* October 29, 2024, Text Order. On November 19, 2024, Plaintiff filed its AC. ECF No. 24. Defendants moved to dismiss for lack of subject matter jurisdiction and failure to state a claim. ECF No. 26-1 (Mot. to Dismiss). Plaintiff filed its Opposition, with no request for leave to further amend, on February 13, 2025. ECF No. 30 (Opp'n).[4] Defendants filed their reply on April 14, 2025. ECF No. 33 (Reply).

## LEGAL STANDARD

   *A. Rule 12(b)(1)*

When a party moves to dismiss under Rule 12(b)(1) as well as on other grounds, courts "consider the Rule 12(b)(1) challenge first" because if a court finds that it lacks subject matter

---

[4]     Plaintiff attached to its opposition a declaration of Dr. Michael Brisman, CEO of Plaintiff, *see* ECF No. 30-1, as well as two letters from medical associations to Defendants commenting on Defendants' proposed rule change discussed above, *see* ECF No. 30-3; ECF No. 30-4. In ruling on Defendants' motion, the Court does not consider these attachments. Defendants move to dismiss pursuant to Rules 12(b)(1) and 12(b)(6). Their 12(b)(1) motion is "facial" because they are not "proffering evidence beyond the [p]leading." *See Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 57 (2d Cir. 2016). For facial motions to dismiss under Rule 12(b)(1) and for motions to dismiss under Rule 12(b)(6), the Court may consider only "the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (considering a motion to dismiss pursuant to Rule 12(b)(6)); *see also Carter*, 822 F.3d at 56 (considering a "facial" motion to dismiss pursuant to Rule 12(b)(1)).

jurisdiction, then the defendants' other "defenses and objections become moot and do not need to be determined." *Daly v. Citigroup Inc.*, 939 F.3d 415, 426 (2d Cir. 2019). "A district court properly dismisses an action under [Rule 12(b)(1)] for lack of subject matter jurisdiction if the court lacks the statutory or constitutional power to adjudicate it, such as when . . . the plaintiff lacks constitutional standing to bring the action." *Cortlandt St. Recovery Corp. v. Hellas Telecomms. S.à.r.l.*, 790 F.3d 411, 416–17 (2d Cir. 2015). "A plaintiff asserting subject matter jurisdiction must prove by a preponderance of the evidence that it exists." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). In considering a motion to dismiss for lack of subject matter jurisdiction, a "district court must take all uncontroverted facts in the complaint (or petition) as true, and draw all reasonable inferences in favor of the party asserting jurisdiction." *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014). Furthermore, the Court must assume that Plaintiff's legal claims "would be successful on the merits." *See Clementine Co., LLC v. Adams*, 74 F.4th 77, 83 (2d Cir. 2023).

      B. Rule 12(b)(6)

"To survive a motion to dismiss under Rule 12(b)(6), the complaint must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Johnson v. Mount Sinai Hosp. Grp.*, No. 23-466, 2024 WL 3289475, at *1 (2d Cir. July 3, 2024) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim is plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.

6

# DISCUSSION

## I. Plaintiff Has Standing

Article III of the U.S. Constitution "limits the jurisdiction of the federal courts to the resolution of cases and controversies." *Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59, 62 (2d Cir. 2012). Whether there is a case or controversy "is the threshold question in every case, determining the power of the court to entertain the suit." *Id.* "[T]o ensure that this bedrock case-or-controversy requirement is met, courts require that plaintiffs establish their standing as the proper parties to bring suit." *Selevan v. N.Y. Thruway Auth.*, 584 F.3d 82, 89 (2d Cir. 2009). If a district court "lacks the statutory or constitutional power to adjudicate" a case because, for example, the plaintiffs "lack[ ] constitutional standing to bring the action," the case is "properly dismisse[d] . . . under [Rule] 12(b)(1) for lack of subject matter jurisdiction." *Cortlandt*, 790 F.3d at 416–17. To satisfy the constitutional requirement of standing, plaintiffs in federal court bear the burden of establishing: "(1) that they suffered an injury in fact, (2) that the injury is fairly traceable to [d]efendants' challenged conduct, and (3) that the injury is likely to be redressed by a favorable decision." *Soule ex rel. Stanescu v. Conn. Ass'n of Schs., Inc.*, 90 F.4th 34, 45 (2d Cir. 2023).

### A. Injury in Fact

Plaintiffs "establish[ ] injury in fact if [they] suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Melito v. Experian Mktg. Sols., Inc.*, 923 F.3d 85, 92 (2d Cir. 2019). Here, Plaintiff alleges that Defendants have violated their obligations under the NSA by "refusing to step in immediately and protect the ability" of Plaintiff to object to Payers' proposed alternative IDR entities. AC ¶ 55. Plaintiff alleges that Defendants' failure to act has harmed it in two

7

ways:  (1) the IDR entity selection "forced" on Plaintiff by Payers "statistically and historically" favors Payers—lowering Plaintiff's reimbursement values, and (2) the IDR entity Payers typically select takes "longer than average to come to a determination."  *Id.* ¶ 46.

Defendants argue that Plaintiff lacks standing because Plaintiff has not alleged "concrete injury-in-fact."  ECF No. 26-1 at 17.  Defendants acknowledge that Plaintiff cited eight examples of Payers proposing alternative IDR entities near the end of the Selection Period.  *Id.* at 17–18.  However, they argue that Plaintiff has not alleged that any of those entities was actually selected, that Plaintiff was the losing party in those arbitrations, or that it received a worse outcome because of the IDR entity that decided the case.  *Id.* at 18.  According to Defendants, Plaintiff's theory of standing depends "on the statistical probability of harm—rather than actual and concrete harm."  *Id* at 19.

Although Plaintiff does not allege that it was the losing party in the eight examples of last-minute IDR selections it cites, it does allege concrete harm in another way.  Plaintiff alleges that Payers, "in almost all cases," select Maximus in its eleventh-hour IDR proposals, and that Maximus takes "longer than average to come to a determination."  AC ¶¶ 46, 54.  Therefore, according to Plaintiff, even if it prevails at the IDR proceeding, it takes "far longer to get its additional reimbursement."  *Id.* ¶ 47.  Defendants do not address the harm Plaintiff alleges due to the loss of the time-value of money.  *See generally* ECF No. 26-1; ECF No. 33.  However, "[m]ultiple courts have found that the deprivation of the time-value of money suffices, at the pleading stage, to establish a concrete injury for purposes of standing."  *Davis v. Banana Republic LLC*, No. 21-cv-6160, 2023 WL 5969597, at *4 (E.D.N.Y. Sept. 14, 2023) (collecting cases); *see also Neurological Surgery Prac. of Long Island, PLLC v. United States Dep't of Health & Hum. Servs.*, 682 F. Supp. 3d 249, 257 (E.D.N.Y. 2023) ("Plaintiff has shown an

8

actual, concrete injury in the form of delayed or unpaid payments.").[5] "[T]he loss of the time value of money owed to plaintiff is not a harm that *might* occur, but one that *has* occurred." *Zachary v. BG Retail, LLC*, 716 F. Supp. 3d 339 (S.D.N.Y. 2024) (emphasis in original). Accordingly, Plaintiff's allegations of delayed reimbursement are sufficient at the pleading stage to establish concrete injury and satisfy the injury-in-fact requirement for Article III standing.

### B. Traceability

To have standing, in addition to concrete injury, Plaintiff must also establish "that the injury is fairly traceable to Defendants' challenged conduct." *Soule*, 90 F.4th at 45. In other words, Plaintiff must allege that there is a "causal nexus" between the Defendants' actions and its injury. *See DiPizio v. Empire State Dev. Corp.*, 745 F. App'x 385, 388 (2d Cir. 2018). "At the motion to dismiss stage, [P]laintiff['s] burden on traceability is relatively modest." *Leslie v. City of New York,* No. 22-cv-2305, 2023 WL 2612688, at *5 (S.D.N.Y. Mar. 23, 2023). Additionally, for the purposes of standing, the Court must "accept as valid the merits of [Plaintiff's] legal claims." *FEC v. Ted Cruz for Senate*, 596 U.S. 289, 298 (2022). Defendants do not contest the traceability element of standing. *See generally* ECF No. 26-1; ECF No. 33. Plaintiff alleges that Defendants have failed to comply with their obligations under the NSA. AC ¶¶ 55–57. Specifically, Plaintiff alleges that Defendants violated the NSA by failing to protect providers' ability to object to Payers' proposed IDR entities, effectively forcing acceptance of the Payers' choices. *Id.* Plaintiff asserts that this violates the NSA's requirement

---

[5] *Neurological Surgery* was a similar case involving the same parties where Plaintiff requested injunctive relief under the APA for alleged violations of the NSA. In his well-reasoned decision, Judge Cogan found that, although Plaintiff had standing, it failed to state a claim under the APA. *Neurological Surgery*, 682 F. Supp. 3d. at 256–262. As discussed below, I make the same finding here.

9

that the Departments provide a process for joint selection of a certified IDR entity within the Selection Period. *Id.* Assuming *arguendo* that Defendants had a legal duty to act as Plaintiff claims, the Court finds that there is a causal nexus between Plaintiff's alleged injuries and Defendants' failure to protect Plaintiff's ability to object to Payers' proposed IDR entities. Had Defendants established a process that prevented Payers from unilaterally selecting slower-resolving IDR entities, Plaintiff alleges it would have received its reimbursements more promptly, avoiding the financial harm caused by delayed payments.[6] Accordingly, the Court finds that the traceability element of standing is satisfied.

### C. Redressability

In determining redressability, the Court assesses "only whether the allegations are sufficient to establish that [Plaintiff's] requested injunctive relief would theoretically redress the alleged" harm. *See Soule*, 90 F.4th at 48. Plaintiff "need not show that a favorable decision will relieve [its] every injury," only that it "would at least partially redress the alleged injury." *Id.* Again, Defendants do not contest this element of standing. *See generally* ECF No. 26-1; ECF No. 33. Plaintiff requests injunctive relief—as described in greater detail below—that the Defendants "take all steps necessary to honor their statutory obligations." AC ¶ 67. Plaintiff requests that these steps include "requiring that non-initiating parties provide proposed alternative IDR entities in such a manner that provides the initiating party with no less than 36 hours before the end of the [Selection P]eriod to decide whether to accept or reject the non-initiating party's proposed alternative IDR entity." *Id.* ¶ 68. The Court is "confident that if [it]

---

[6] Although Plaintiff's injury appears to be indirectly related to the Defendants' actions, as the Payers are the ones allegedly gaming the system, "indirectness is not necessarily fatal to standing." *See Rothstein v. UBS AG*, 708 F.3d 82, 91–92 (2d Cir. 2013) ("[T]he fact that there is an intervening cause of the plaintiff's injury . . . is not necessarily a basis for finding that the injury is not fairly traceable to the acts of the defendant[s].").

were to order [Defendants] to take the actions requested by [P]laintiff, at least some of [P]laintiff's harms could be remedied." *See Neurological Surgery*, 682 F. Supp. 3d at 259 (finding that plaintiff had standing to sue). Accordingly, the Court finds that Plaintiff's "injury is likely to be redressed by a favorable decision." *Soule*, 90 F.4th at 45. Because Plaintiff has plausibly alleged a "concrete, particularized, and actual injury in fact redressable by . . . injunction . . . related to the particularized injury" it alleges, the Court finds that it has Article III standing. *See id.* at 51.

##     II.    The Issue is Ripe

Plaintiff's claims are both constitutionally and prudentially ripe for judicial review. *See Simmonds v. I.N.S.*, 326 F.3d 351, 357 (2d Cir. 2003) (explaining that the term "ripeness" describes two overlapping threshold criteria for the exercise of a federal court's jurisdiction). Constitutional ripeness prevents courts from declaring the meaning of the law and constructing legal rules unless required to resolve an actual dispute. *See id.* Prudential ripeness prevents courts from presently deciding a case if it will be better decided later. *See id.* Constitutional ripeness is a subset of the injury-in-fact element of Article III standing, therefore "in most cases, that a plaintiff has Article III standing is enough to render its claim constitutionally ripe." *See, e.g., id; All. of Auto. Mfrs., Inc. v. Currey*, 610 F. App'x 10, 12 (2d Cir. 2015). That is the case here. Plaintiff's claims are constitutionally ripe for the reasons explained above, in Section I.A. *See Vullo v. Off. of Comptroller of the Currency*, No. 17-cv-3574, 2017 WL 6512245, at *8 (S.D.N.Y. Dec. 12, 2017) ("Since constitutional ripeness is a subset of the injury-in-fact element of Article III standing, our constitutional ripeness analysis here is coterminous with our standing analysis above.").

11

Defendants argue that Plaintiff's claims are prudentially unripe, "at least until the rulemaking has been completed," because the outcome of the pending rulemaking might afford Plaintiff relief.[7]  ECF No. 26-1 at 22–23.  The Court disagrees.  Although the proposed rule may potentially afford Plaintiff relief, it is prospective and subject to change.  *See Long Island Care at Home, Ltd. v. Coke*, 551 U.S. 158, 175 (2007) ("Since the proposed rule was simply a proposal, its presence meant that the Department was considering the matter; after that consideration the Department might choose to adopt the proposal or to withdraw it.").  Additionally, Plaintiff's claims "would not benefit from any further factual development" and the Court may "be in no better position to adjudicate the issues in the future than it is now." *New York C.L. Union v. Grandeau*, 528 F.3d 122, 132 (2d Cir. 2008).  Thus, the Court finds it best to determine this case now rather than later.  *See Simmonds*, 326 F.3d at 357.

### III.    Plaintiff Has Failed to State a Claim

Although the issue is ripe and Plaintiff has standing, Plaintiff cannot meet the higher threshold required to sustain a substantive cause of action.  *See Harry v. Total Gas & Power N. Am., Inc.*, 889 F.3d 104, 110 (2d Cir. 2018) ("It is well established in principle that the pleading standard for constitutional standing is lower than the standard for a substantive cause of action.").  Plaintiff's Amended Complaint essentially asks this Court to "rewrite the [NSA] to make it do what [P]laintiff believes Congress intended it to do." *Neurological Surgery*, 682 F. Supp. 3d at 255.  Unfortunately for Plaintiff, the Court cannot grant the relief Plaintiff seeks.  The APA "empowers a court only to compel an agency to perform a ministerial or non-

---

[7]    Defendants also argue that this lawsuit would become moot "in the event the final rule fully alleviates Plaintiff's concerns[.]" ECF No. 26-1 at 17.  On the record before me, the case is not moot.  The Court declines to speculate as to whether (i) the final rule will ever actually be adopted, (ii) what the contours of that rule would be, and (iii) whether it would cure the injuries alleged by Plaintiff.

12

discretionary act, or to take action upon a matter, without directing *how* it shall act." *Benzman v. Whitman*, 523 F.3d 119, 130 (2d Cir. 2008) (emphasis in original). This "limitation precludes . . . broad programmatic attack[s]," and "rules out judicial direction of even discrete agency action that is not demanded by law." *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64–65 (2004) ("*SUWA*").

Plaintiff alleges that by "refusing to step in immediately and protect the ability" of Plaintiff to object to proposed IDR entities, Defendants have "violate[d] the express provisions of the [NSA]," which mandates that Defendants provide for a method for the parties to jointly select a qualifying IDR entity. AC ¶¶ 64–65. The statute provides in relevant part:

> The Secretary shall, with respect to the determination of the amount of payment under this subsection of an item or service, provide for a method—
> (i) that allows for the group health plan or health insurance issuer offering group or individual health insurance coverage and the nonparticipating provider or the nonparticipating emergency facility (as applicable) involved in a notification under paragraph (1)(B) to jointly select, not later than the last day of the 3-business day period following the date of the initiation of the process with respect to such item or service, for purposes of making such determination, an entity certified under this paragraph that—
>> (I) is not a party to such determination or an employee or agent of such a party;
>> (II) does not have a material familial, financial, or professional relationship with such a party; and
>> (III) does not otherwise have a conflict of interest with such a party (as determined by the Secretary); and
>
> (ii) that requires, in the case such parties do not make such selection by such last day, the Secretary to, not later than 6 business days after such date of initiation—
>> (I) select such an entity that satisfies subclauses (I) through (III) of clause (i)); 2 and
>> (II) provide notification of such selection to the provider or facility (as applicable) and the plan or issuer (as applicable) party to such determination.

42 U.S.C. § 300gg-111(c)(4)(F). Plaintiff contends that this provision "unambiguously require[s]" Defendants to "create an IDR selection process in which no party has the power to unilaterally select the IDR [entity]." ECF No. 30 at 24. Yet, according to Plaintiff, the rule

13

promulgated by Defendants, *see* 45 C.F.R. § 149.510, improperly treats the non-initiating party's unilateral selection as a joint choice, undermines the agencies' role in selecting an IDR entity, discourages genuine joint selection efforts, encourages last-minute selections by Payers, and creates a bias in favor of Payers by giving them effective control over IDR entity selection. ECF No. 30 at 25–26.

Therefore, Plaintiff argues, it is "entitled to an order under [the APA]" directing Defendants to take the following steps: (1) require non-initiating parties to propose alternative IDR entities early enough to give the initiating party at least 36 hours to respond before the end of the Selection Period, and (2) for any ongoing IDR proceedings where (i) the non-initiating party's proposed IDR entity was automatically selected due to the initiating party's lack of timely response, and (ii) the initiating party was given less than 36 hours to decide, withdraw the selection and assign a new IDR entity through the random selection process. *Id.* ¶¶ 67–68. The Court however, lacks the authority to issue such an order.

The APA only allows a court to order an agency to carry out a required, non-discretionary duty or to act on an issue—not tell an agency what decision to make. *See SUWA*, 542 U.S. at 64. Furthermore, "when an agency is compelled by law to act within a certain time period, but the manner of its action is left to the agency's discretion, a court can compel the agency to act, but has no power to specify what the action must be." *Id.* at 65. Therefore, an APA claim "can proceed only where a plaintiff asserts that an agency failed to take a discrete agency action that it is required to take." *Id.* at 64.[8] That is not the case here.

---

[8] The Supreme Court has emphasized the need to avoid judicial overreach into agency discretion: "[t]he principal purpose of the APA limitations we have discussed—and of the traditional limitations upon mandamus from which they were derived—is to protect agencies from undue judicial interference with their lawful discretion, and to avoid judicial entanglement in abstract policy disagreements which courts lack both expertise and information to resolve. If

Here, the NSA compelled Defendants to "provide for a method" where the providers and Payers "jointly select" an IDR entity within the Selection Period. *See* 42 U.S.C. § 300gg-111(c)(4)(F). Despite its apparent flaws, Defendants have provided such a method, *see* 45 C.F.R. § 149.510, and "[g]eneral deficiencies in compliance . . . lack the specificity requisite for agency action." *SUWA*, 542 U.S. at 66. Moreover, Plaintiff does not identify any specific statutory provision that mandates a 36-hour period for initiating parties to decide whether to accept or reject a proposed alternative IDR entity, *see generally* ECF No. 30, and the APA "rules out judicial discretion of even discrete agency action that is not demanded by law." *SUWA*, 542 U.S. at 65.

The Court sympathizes with Plaintiff's complaints that the current method, when the initiating party does not respond in time, "treats the selection of the non-initiating party (almost always the payer) as though it were the parties' 'joint' selection, even though it is not," and "incentivizes the non-initiating party to . . . make a last-minute selection of its own preferred IDR [entity]." ECF No. 30 at 25–26. However, "it is not the province of this Court to order a reworking of a legislative and executive program." *Neurological Surgery*, 682 F. Supp. 3d at 254. Plaintiff's best recourse is to continue to urge the Defendants to adopt their proposed rule, *see Fed. Indep. Disp. Resol. Operations*, 88 Fed. Reg. 75,744, 75,774–75 (proposed Nov. 3, 2023), as it is a "very basic tenet of administrative law that agencies should be free to fashion their own rules of procedure." *See Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 102 (2015). Indeed, "[t]ime and again," the Supreme Court has "reiterated that the APA sets forth the full

---

courts were empowered to enter general orders compelling compliance with broad statutory mandates, they would necessarily be empowered, as well, to determine whether compliance was achieved—which would mean that it would ultimately become the task of the supervising court, rather than the agency, to work out compliance with the broad statutory mandate, injecting the judge into day-to-day agency management." *SUWA,* 542 U.S. at 66–67.

extent of judicial authority to review executive agency action" and that "courts lack authority to impose upon an agency its own notion of which procedures are best." *Id.* at 101–02 (2015).[9]

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED in its entirety. *See* ECF No. 26-1. The Amended Complaint is dismissed with prejudice. The Clerk of Court is respectfully directed to enter judgment consistent with this Order and to close this case.

SO ORDERED.

*/s/ Hector Gonzalez*
HECTOR GONZALEZ
United States District Judge

Dated: Brooklyn, New York
May 23, 2025

---

[9] Plaintiff also argues that it is entitled to a writ of mandamus under the All-Writs Act, 28 U.S.C. § 1651(a). *See* ECF No. 24 ¶ 76. "[I]n the context of a suit to compel agency action, the avenues of relief that the Mandamus Act and the APA provide are essentially the same." *Ruan v. Wolf*, No. 19-cv-4063, 2020 WL 639127, at *3 (E.D.N.Y. Feb. 11, 2020). Further, "many district courts . . . have found APA and mandamus jurisdiction to be co-extensive." *Bondarenko v. Chertoff*, No. 07-mc-00002, 2007 WL 2693642, at *10 (W.D.N.Y. Sept. 11, 2007) (collecting cases). As a result, Plaintiff's claims under the All-Writs Act fail for the same reasons as its APA claims. *See Dong v. Mayorkas*, No. 23-cv-9224, 2024 WL 3498508, at *2 n.2 (E.D.N.Y. July 22, 2024).